**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**ONASIS EDUARDO RAMIREZ MIRANDA,**
**A# 097533123,**

**Petitioner,**

**v.** **Case No. 2:26cv233**

**PAUL PERRY, *et al.*,**

**Respondents.**

## REPORT AND RECOMMENDATION

Pending before the Court is a Petition for a Writ of Habeas Corpus submitted pursuant to 28 U.S.C. § 2241 ("the Petition"), ECF No. 1. Respondents oppose granting the Petition. ECF No. 11. This case was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(A)–(B) and Rule 72(b) of the Federal Rules of Civil Procedure. For the foregoing reasons, the undersigned **RECOMMENDS** that the Petition, ECF No. 1, be **DENIED** without prejudice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Court received the Petition on February 25, 2026, and filed it on March 11, 2026. ECF No. 1. Petitioner Onasis Eduardo Ramirez Miranda ("Petitioner") is a native and citizen of El Salvador who is currently detained pursuant to 8 U.S.C. § 1231 at Caroline Detention Facility pending his removal to El Salvador. ECF No. 11, attach. 1 at 3. Petitioner first entered the United States without being inspected or admitted at an unknown date and time. *Id.* On April 6, 2007, Enforcement and Removal Operations ("ERO") encountered Petitioner at the Suffolk County Correctional Center in connection with pending charges for Driving While Intoxicated, which

Petitioner was later convicted of on April 9, 2007. *Id.* Petitioner was not taken into immigration custody when ERO encountered him on April 6. *Id.*

On April 7, 2007, Petitioner was issued a Notice to Appear ("NTA"), charging him as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled, or who arrived in the United States at a time or place other than as designated by the Attorney General. *Id.* at 3-4. Petitioner appeared before the Immigration Court for an initial master calendar hearing on June 28, 2007, and requested a continuance to retain counsel. *Id.* at 4. The Immigration Judge continued the matter and instructed Petitioner to appear for a subsequent hearing on August 2, 2007. *Id.* Petitioner failed to appear for that hearing, and the Immigration Court ordered him removed in absentia to El Salvador. *Id.*

On April 7, 2016, ERO encountered Petitioner at the Fairfax County Jail following his arrest by local authorities for a second Driving While Intoxicated charge. *Id.* After confirming Petitioner's identity and immigration history, ERO took Petitioner into civil immigration custody. *Id.* On April 20, 2016, Petitioner filed a motion to reopen with the Immigration Court, which was denied on May 27, 2016. *Id.* Petitioner was removed from the United States to El Salvador on June 20, 2016. *Id.*

On August 15, 2016, Customs and Border Protection agents encountered Petitioner in the Rio Grande Valley area of Texas after Petitioner reentered the United States without authorization. *Id.* Following verification of his identity and immigration history, Petitioner was taken into civil immigration custody and issued a Form I-871, Notice of Intent/Decision to Reinstate Prior Order. *Id.* During reinstatement proceedings, Petitioner claimed a fear of returning to El Salvador and was referred to U.S. Citizenship and Immigration Services ("USCIS") for a Reasonable Fear Interview ("RFI"). *Id.* Before USCIS conducted the interview, however, Petitioner withdrew his

fear claim on August 23, 2016. *Id.* Petitioner was thereafter removed from the United States on September 6, 2016. *Id.*

Petitioner subsequently entered the United States for a third time at an unknown date and time. *Id.* On March 13, 2020, Petitioner was arrested by the Fairfax County Police Department for a third Driving While Intoxicated charge. *Id.* at 5. Following his release from local custody, ERO took Petitioner into civil immigration custody and again issued a Form I-871 reinstating Petitioner's prior removal order. *Id.* During reinstatement proceedings, Petitioner claimed a fear of returning to El Salvador and was referred to USCIS for an RFI. *Id.* USCIS determined that Petitioner had established a reasonable fear of return and issued a Form I-863, Notice of Referral to Immigration Judge, which placed Petitioner in withholding-only proceedings. *Id.*

On April 15, 2020, the Immigration Court granted Petitioner bond in the amount of $20,000, which Petitioner posted on April 17, 2020, resulting in his release from immigration custody. *Id.* The Department of Homeland Security ("DHS") subsequently filed a motion to reconsider the bond determination, which the Immigration Court denied on May 15, 2020. *Id.* DHS timely appealed both the Immigration Court's grant of bond and denial of reconsideration to the Board of Immigration Appeals ("BIA"). *Id.*

On July 8, 2020, Petitioner filed a Form I-589 Application for Withholding of Removal and protection under the Convention Against Torture with the Immigration Court. *Id.* On December 1, 2020, the BIA remanded the bond matter to the Immigration Court for preparation of a bond memorandum supporting its prior decision. *Id.* The parties were afforded an opportunity to supplement the record, and Petitioner submitted supplemental evidence on February 24, 2021. *Id.* The Immigration Court issued its bond memorandum on January 27, 2021. *Id.*

On January 11, 2021, Petitioner was convicted of Driving While Intoxicated arising from his March 13, 2020, arrest. *Id.* On September 18, 2024, the Immigration Court denied Petitioner's applications for withholding of removal and protection under the Convention Against Torture and ordered him removed to El Salvador. *Id.* at 6. Petitioner timely appealed that decision to the BIA. *Id.*

On February 14, 2025, the BIA sustained DHS's appeal of the Immigration Court's bond determination, vacated Petitioner's bond, and ordered Petitioner detained without bond. *Id.*; *see* ECF No. 11, attach. 2. ERO subsequently took Petitioner back into civil immigration custody on June 2, 2025. ECF No. 11, attach. 1 at 6. On August 28, 2025, ERO conducted a post-order custody review and determined that Petitioner should remain detained because he had not demonstrated that he did not pose a danger to the community, the safety of other persons, or property, and because he posed a significant flight risk pending removal. *Id.*; *see* ECF No. 11, attach. 3. ERO based that determination on Petitioner's prior removals from the United States, his two convictions for Driving While Intoxicated, and evidence that Petitioner was a member of the designated Foreign Terrorist Organization Mara Salvatrucha ("MS-13"). ECF No. 11, attach. 1 at 6.

On November 7, 2025, the BIA dismissed Petitioner's appeal of the Immigration Judge's denial of his applications for relief and protection. *Id.* Petitioner then timely filed a Petition for Review ("PFR") with the United States Court of Appeals for the Fourth Circuit. *Id.* On January 2, 2026, the Fourth Circuit issued a stay of removal pending adjudication of Petitioner's PFR and placed in abeyance the Respondent's motion to dismiss, or in the alternative, for summary disposition pending a decision in a separate case before the Fourth Circuit. *Id.*; *Miranda v. Blanche*, No. 25-2402, Dkt. No. 23 (4th Cir. Jan. 9, 2026). ERO represents that Petitioner may be

promptly removed to El Salvador once no legal impediments to removal remain. ECF No. 11, attach. 1 at 6.

In his Petition, Petitioner argues that his continued detention violates the Due Process Clause of the Fifth Amendment because his removal is no longer reasonably foreseeable. ECF No. 1 at 2, 6–8. Specifically, Petitioner argues that, since being detained in June 2025, his detention has become "prolonged and effectively open-ended" due to the Fourth Circuit's issuance of a judicial stay of removal and placement of his case in abeyance. *Id.* at 7. According to Petitioner, those actions render his removal "not legally executable" because "there is no reasonably foreseeable timeline for the completion of [his] appellate proceeding." *Id.* Petitioner further argues that he has not received any individualized custody review since being taken into custody in June 2025, and that the Government "has not clearly articulated" a basis for his continued detention or its expected duration. *Id.* at 7–8. Petitioner requests his immediate release from detention or, in the alternative, a constitutionally adequate custody hearing "at which the Government bears the burden of justifying" continued detention, an order prohibiting his transfer outside this Court's jurisdiction during the pendency of the Instant Petition, and any additional relief deemed appropriate. *Id.* at 8.

Respondents filed an Opposition to the Petition on April 23, 2026, along with the Declaration of Charles M. Byrne, Assistant Field Office Director with ICE. ECF No. 11; ECF No. 11, attach. 1. Respondents argue that the Petition should be dismissed because Petitioner's detention complies with *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). ECF No. 11 at 9–11. Specifically, Respondents argue that while Petitioner's detention has exceeded the six-month presumptively reasonable period established by *Zadvydas*, Petitioner cannot demonstrate that his removal is not reasonably foreseeable. *Id.* Respondents further argue that Petitioner requests

additional due process than what is required under *Zadvydas*, and that even if Petitioner was entitled to additional due process, the relevant test under *Mathews v. Eldridge* does not require the relief he seeks and weighs in favor of his continued detention. *Id.* at 11–18. Respondents contend that, even if the Court concludes that additional process is warranted, Petitioner has already received a bond hearing at which it was determined that he should remain detained without bond. *Id.* at 18. Accordingly, Respondents contend that the only relief that should be ordered is a standard bond hearing pursuant to 8 U.S.C. § 1226(a), rather than Petitioner's immediate release. *Id.* at 19.

Petitioner filed a reply to Respondents' Opposition on May 12, 2026. ECF No. 12. In his reply, Petitioner repeats multiple arguments regarding his continued detention and the decision not to release him on bond, including arguing that he does not pose a danger to the community and is not a risk of flight. *Id.* at 1–10, 17–27. Petitioner also argues that his meritorious claim regarding his fear of removal "supported by newly available evidence of changed conditions" renders his removal not reasonably foreseeable, and that there are alternative conditions of release that could better mitigate risk of flight than his continued detention. *Id.* at 10–17.

Accordingly, this matter is ripe for recommended disposition.

## II. DISCUSSION

Pursuant to 28 U.S.C. § 2241, federal courts are authorized to issue a writ of habeas corpus to one who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The writ of habeas corpus has traditionally 'served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest.'" *Luna Sanchez v. Bondi*, No. 1:25-CV-018888, 2025 WL 3191922, at *2 (E.D. Va. Nov. 14, 2025) (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)). Habeas is "regularly invoked

on behalf of noncitizens." *Id.* (quoting *Quispe-Ardiles v. Noem*, No. 1:25-cv-01382, 2025 WL 2783800, at *3 (E.D. Va. Sept. 30, 2025)) (additional citations omitted).

Pursuant to the Due Process Clause of the Fifth Amendment, no *person* shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Due Process Clause extends to *all* persons, including "aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "As the Supreme Court has recognized, 'habeas corpus in the federal courts provides a mode for the redress of denials of due process of law. Vindication of due process is precisely its historic office.'" *Castaneda v. Perry*, 95 F.4th 750, 762 (4th Cir. 2024) (citing *Fay v. Noia*, 372 U.S. 391, 402 (1963), *overruled on other grounds by Wainwright v. Sykes*, 433 U.S. 72 (1977)).

After an order of removal becomes final, the Attorney General "shall detain the alien" during the ninety-day removal period established under 8 U.S.C. § 1231(a)(2). *Zadvydas v. Davis*, 533 U.S. 678, 683 (2001). "Section 1231 governs the detention and removal of aliens subject to administrative final orders of removal, including reinstated orders of removal." *Castaneda*, 95 F.4th at 754. The Supreme Court in *Zadvydas* held that the INA contains an implicit limitation of this detention period past ninety days: detention is presumptively reasonable for up to six months. *Id.* After that six-month period has elapsed, if the alien[1] demonstrates "that there is no significant likelihood of removal in the reasonably foreseeable future," then the Government must respond with evidence sufficient to rebut that showing. *Id.* The six-month presumption does not require automatic release once an alien's detention reaches six months; rather, an alien may remain detained until it is determined that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.*

[1] Consistent with the INA's text, the Court uses the term "alien" here. *See* § 1101(a)(3) (defining an "alien" as "any person not a citizen or national of the United States").

**A. Petitioner's Detention is Not Presumptively Reasonable**

Here, Respondents acknowledge that Petitioner has been in post-removal-period detention—which began in 2020, following the second reinstatement of his prior removal order—beyond the presumptively reasonable six-month period established by *Zadvydas*. ECF No. 11 at 9. Rather, Respondents contend that Petitioner cannot show that his removal is not reasonably foreseeable based on the Fourth Circuit's stay of removal pending review of his PFR. ECF No. 11 at 9. Thus, the question becomes whether Petitioner has provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. If he has, then the burden shifts to the Government to rebut that showing. If he has not, then his claim fails.

**B. Petitioner Cannot Show that There is no Significant Likelihood of Removal in the Reasonably Foreseeable Future**

Petitioner argues that the prolonged nature of his detention violates his due process rights,[2] especially where the Fourth Circuit has stayed his removal and held his pending PFR in abeyance pending the resolution of a separate case. ECF No. 1 at 13, 15–16, 20. Petitioner argues that the Fourth Circuit's stay and placement of the PFR in abeyance has rendered his removal "not legally

[2] Petitioner analyzes whether the procedures used to justify his continued detention satisfy the Due Process Clause under *Mathews v. Eldridge*, 424 U.S. 319 (1976), as well as whether his detention is unreasonable under the Fourth Amendment. ECF No. 1 at 16–18. However, the Supreme Court's decision in *Zadvydas v. Davis* largely governs, and limits, due process challenges to detention under § 1231. Accordingly, if a petitioner in post-removal-order detention cannot satisfy *Zadvydas*—that is, showing that there is no significant likelihood of removal in the reasonably foreseeable future—he necessarily fails to establish a due process violation. *Castaneda*, 95 F.4th at 760 ("[T]he *Zadvydas* standard *is* due process: a § 1231 detainee who fails the *Zadvydas* test fails to prove a due process violation."). The Court therefore recognizes that *Zadvydas* defines the process to which Petitioner is entitled and needs not separately address the parties' arguments regarding due process under *Mathews v. Eldridge* or Petitioner's argument regarding the reasonableness of his detention under the Fourth Amendment. *See* ECF No. 1 at 16–19; ECF No. 11 at 13–18.

executable" because "there is no anticipated timeline for resolution of hes [sic] appellate proccedings [sic]." *Id.* at 15.

The length of Petitioner's detention and the pendency of his PFR alone are insufficient to constitute a due process violation. As the Fourth Circuit explained in *Castaneda v. Perry*, the constitutional concern behind *Zadvydas* was the possibility of "indefinite and potentially permanent" detention where removal was no longer practically attainable because no country would accept the petitioners. 95 F.4th at 757 (quoting *Zadvydas*, 533 U.S. at 696) (internal quotation marks omitted). By contrast, detention pending the resolution of withholding-only proceedings has a "definite termination point"—the conclusion of those proceedings. *Id.* at 757. Rather than face potentially indefinite detention like the petitioners did in *Zadvydas*, a petitioner detained pending the resolution of withholding-proceedings faces a definite end to their detention once the withholding-only proceeding has finished. *See id.* at 757–58 ("As such, ongoing withholding-only proceedings, even lengthy ones, simply do not present the same risk of 'indefinite and potentially permanent' detention at issue in *Zadvydas.* Stated differently, ongoing withholding-only proceedings do not, standing alone, cast doubt on the foreseeability of an alien's removal in the future."); *cf. Portela-Hernandez v. Trump*, No. 25-1633-BAH, 2026 WL 74042, at *14 (D. Md. Jan. 9, 2026) ("In taking this position and not providing [immigration judge] review of the asylum officer's decision, it follows that removal cannot be reasonably foreseeable as there is no end to [the petitioner's] detention in the reasonably foreseeable future because he will not receive the process he is due."). Thus, the fact that proceedings have become prolonged or that there is no end date in sight for their conclusion does not establish that removal is not reasonably foreseeable.

Here, Petitioner remains detained subject to a reinstated final order of removal to El Salvador, and there is no dispute concerning either his removability or Respondents' ability to remove him to El Salvador once the judicial stay is lifted. Rather, Petitioner's removal is presently stayed because of the ongoing appellate proceedings that he initiated by filing a PFR with the Fourth Circuit. As in *Castaneda*, those proceedings are "finite" in nature, even if the exact timing of the proceedings cannot presently be determined. *Id.* at 757. If Petitioner's PFR is denied, nothing in the record suggests that Respondents could not execute his removal to El Salvador, and if Petitioner ultimately prevails, Respondents may nevertheless remove him to another country if they continue removal efforts. *See id.* at 758 ("If Vasquez Castaneda does not prevail in his withholding-only proceedings, then nothing stands in the way of his prompt removal to El Salvador. And if he does succeed, nothing would prevent ICE from removing him to another country.").

Moreover, the Fourth Circuit's decision to hold Petitioner's PFR in abeyance does not change the ultimate disposition. Although the abeyance order may prolong the resolution of Petitioner's appeal, the proceedings nonetheless continue within the ordinary course of litigation. *See id.* at 761 ("[T]he proceedings have progressed—and continue to progress—in their normal course. Critically, there has been *no* showing that the Government, through bad-faith or careless dilatory conduct, has delayed the resolution of those proceedings. To the contrary, the district court found, and the record confirms, that any delay is attributable to 'ordinary litigation processes[.]'" (quoting *Castaneda v. Perry*, No. 121CV1407PTGIDD, 2022 WL 4624832, at *3 n.5 (E.D. Va. Sept. 30, 2022))). As the Fourth Circuit recognized in *Castaneda*, what matters is not whether the judicial proceedings will conclude imminently but whether they are inherently indefinite or potentially permanent. Here, they are not.

Accordingly, Petitioner has failed to carry his burden of showing that there is no significant likelihood of removal in the reasonably foreseeable future, and he is not entitled to habeas relief.

## III. RECOMMENDATION

For the reasons explained above, the Court **RECOMMENDS** that the Petition, ECF No. 1, be **DENIED** without prejudice.

## IV. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, Petitioner is notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party. *See* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1954).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to Petitioner at his address on record.

/s/

~~Lawrence R. Leonard~~
~~United States Magistrate Judge~~

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
May 13, 2026